UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:21-mj-05138-MAS-1 |
| v. ) | |
| ) | |
| MICHAEL COMBERGER, ) | |
| ) | |
| Defendant. ) | |

## **DETENTION ORDER**

The Complaint alleges that Defendant Michael Comberger ("Comberger") transported individuals in interstate commerce for the purpose of engaging in prostitution, in violation of 18 U.S.C. § 2421(a), and enticed individuals to travel in interstate commerce for the purpose of engaging in prostitution, in violation of 18 U.S.C. § 2422(a). [DE 1 (Complaint); DE 1-1 (Affidavit)]. The United States orally sought detention per 18 U.S.C. § 3142(f)(2)(B), and the Court determined that the Government was entitled to make the motion based on a threshold showing that Comberger had publicly posted on social media an endorsement (in the abstract) of mortal violence towards individuals cooperating with law enforcement.[1] [DE 6].

The Court conducted a detention hearing on April 23, 2021. [DE 8]. It afforded both sides all procedural rights outlined in the Bail Reform Act ("BRA"). Per Federal Rule of Appellate Procedure 9(a) and for the reasons discussed in this opinion, the BRA requires Comberger's detention.

---

[1] The Court discusses the applicable social media post in greater detail *infra* as it relates to the United States' argued danger theory.

1

# I. BRA FRAMEWORK

The Government bears the burden of establishing that detention is warranted. Detention premised on nonappearance requires preponderant evidence of flight risk. *See, e.g., United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Danger-based detention demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately mitigate danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Although the United States' initial motion for detention was based on the risk of obstructing justice, the Court properly expands its analysis to the full range of BRA considerations post-hearing. *See* 18 U.S.C. § 3142(f) (outlining the preliminary showings required to trigger a detention hearing but characterizing the hearing's ultimate inquiry as "whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community"); *see also United States v. Demmler*, No. 2:07-CR-209 (2), 2007 WL 3125308, at *3 (S.D. Ohio Oct. 23, 2007) (observing that, even where § 3142(f)(2)(B) triggered the detention hearing, the overarching question remains whether "the

defendant is likely to continue to engage in criminal activity which poses a threat either to the community or to the safety of particular persons, and such circumstances are not limited to proof that the defendant poses a serious risk either to obstruct justice or to intimidate" witnesses).

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g., United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality, the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and ultimate weight in the detention calculus. The § 3142(g) factors drive the overarching analysis.[2] There is no applicable detention presumption in this case, based on the allegations in the Complaint. *See* 18 U.S.C. §§ 3142(e)(2) and (3).

---

[2] The subsection directs the Court to balance the following:
(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including--
    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

## II. ANALYSIS

Upon engaging the full BRA analysis, the Court finds that the United States has not shown by a preponderance of the evidence, on this record, that Comberger poses a risk of flight or nonappearance. However, the Court concludes that the Government has shown that Comberger presents a risk of danger, and that no conditions can adequately assure community safety under the circumstances. Thus, detention is warranted.

### A. RISK OF FLIGHT

The United States did not rely heavily on flight and/or nonappearance risk as detention grounds. The primary facts supporting detention on such bases are Comberger's lack of employment history and his purported risk of self-harm or suicide. Even combining these facts, the Court is not persuaded.

First, the Pretrial Services Report ("PSR") confirms that Comberger's sole employment for the last approximately 21 years has been as owner of Fantasy Escort Services, the allegedly illicit business facilitating commercial sex transactions that stands at the center of this prosecution. [PSR at 2]. Comberger's lack of legitimate employment history weighs against release, as a general matter. *See, e.g.*, *United States v. Stidham*, No. 3:10-CR-79, 2010 WL 2639925, at *3 (E.D. Tenn. June 25, 2010) (finding that a defendant's lengthy unemployment favors detention). However, the Court is not going to detain an individual simply for lack of employment. Comberger did represent at the detention hearing that he is committed to maintaining legitimate employment if released and detailed steps taken toward obtaining such prior to his arrest.

Second, the self-harm concerns stem from several threats of self-harm made to a cooperating witness in this case just before Comberger's arrest, as well as the amount of detail in the threats, suggesting some level of planning. [Hearing Recording, at 49:15–51:45]. Specifically,

4

Comberger advised the witness that he frequently considered hanging himself and had researched the most effective methods for doing so; he also showed the witness a rope at his home that he could purportedly use to accomplish the task. [*Id.*]. Additionally, the Government emphasized Comberger's prior suicide attempt in 1996, approximately 25 years ago. [PSR at 3]. Comberger countered this was nothing more than puffery, something the United States acknowledged is a common trait with many of Comberger's declarations. Moreover, Comberger's 45 years of residence in the Lexington area and his strong relationship and regular contact with his daughter, Samantha, who resides in Lexington indicate the presence of a support network that, to some extent, may aid in Comberger's compliance with any such conditions. *See* 18 U.S.C. § 3142(g)(3)(A) (considering a defendant's family ties and length of residence in the community).

The Sixth Circuit has not addressed whether suicide risk is a proper factor in the BRA's flight calculus, and relatively few other courts have substantively considered the question. The BRA itself does not suggest whether suicide is a form of flight, and it frames the accompanying danger question squarely in terms of potential harm to "any *other* person and the community[.]" 18 U.S.C. § 3142(g). It is unclear how, if at all, self-harm risk plays into the detention analysis. At least one Circuit has observed that it may be a proper consideration, but that it would not be sufficient to demonstrate flight risk standing alone. *See United States v. Workman*, 680 F. App'x 699, 702 (10th Cir. 2017) (concluding that a district court was "within its discretion to consider suicidal ideation and previous suicide attempts in determining whether it [could] reasonably assure [the defendant's] appearance[,]" but emphasizing that it might have "view[ed] the question differently if the district court considered only . . . suicidal ideation").[3]

---

[3] In reasoning that, "[t]hough . . . [flight] risk is normally conceived in terms of a defendant's willful flight of the charges against him, suicide is, technically speaking, one way that" a defendant could fail to appear[,]" the *Workman* court cited supportive logic from a published

5

Here, while the detailed nature of the plans mentioned to the cooperating witness is concerning, the isolated self-harm comments do not evince a probable, imminent risk that Comberger will follow through with such actions. In fact, since the execution of the search warrant at his residence on February 3, 2021, Comberger had not committed any such self-harm by the time of his arrest on April 16, 2021. [Hearing Recording, at 38:00–39:15]. On balance, the Court does not find the suicide risk, standing alone, sufficiently concrete and unmitigable to warrant flight-based detention.

For these reasons, the Court cannot conclude that it is more likely than not that no conditions could reasonably assure Comberger's future appearance at proceedings in this case. Detention based on flight is not justified.

**B.     RISK OF DANGER**

The United States' danger theory centers on several threatening statements Comberger made to and about certain witnesses cooperating (or thought to be cooperating) with law enforcement in this case. Additionally, Comberger is alleged to have taken steps to destroy certain electronic evidence held by third parties. Given these circumstances, the Court perceives the threats as credible and as presenting a tangible risk of physical and emotional harm to others, witness intimidation, and general interference with or obstruction of this prosecution. Consequently, the balance of factors firmly favors Comberger's detention based on risk of danger, and the Court concludes that there are no conditions that adequately assure community safety. Accordingly, danger-based detention is required.

---

2007 Sixth Circuit case. *See id.* (citing *United States v. Cody*, 498 F.3d 582, 591 (6th Cir. 2007)). The *Cody* Court had noted that it is "logical" to "treat suicide as a form of flight" when deciding admissibility of suicidal ideation as a form of consciousness of guilt evidence. *Cody*, 498 F.3d at 591. Still, *Cody* did not arise in the detention context or address suicide as it relates to the BRA, and its guidance is only tangentially relevant to the instant inquiry.

1. **Nature and Circumstances of the Offense**

The Court first considers the "nature and circumstances of the offense charged[.]" 18 U.S.C. § 3142(g)(1). As noted, this is not a presumption case, and the class of alleged offenses are not enumerated in the BRA. And while the alleged scale of the alleged criminal operation and the length of time it persisted indicates an inherent disregard for the law, there are no facts on this record suggesting that Comberger used physical violence or threats of the same to coerce participation in the illicit scheme. Indeed, the hearing testimony from FBI Special Agent Isaac Robison ("SA Robison") portrayed the women's involvement as voluntary. Nor is it likely that Comberger could continue this criminal enterprise if released or engage in similar conduct without detection. The sole offense circumstance supporting a danger risk, as specifically related to the Government's theory, is the sheer number of likely victims and witnesses in the case. And, the nature of the crimes alleged necessarily renders the prosecution heavily dependent on witness cooperation, which may bolster Comberger's motivation to harm, threaten, or otherwise intimidate those involved. Still, on balance, this factor weighs at least slightly in favor of release given the charged offense.

2. **Weight of Dangerousness Evidence**

The next consideration gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). In the Sixth Circuit, "[t]his factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948. The danger risk here hinges primarily on several threatening statements Comberger made to and about cooperating witnesses in this case. Additionally, the surrounding circumstances—including Comberger's apparent attempts to destroy evidence once he became aware of the investigation into Fantasy Escort Services—enhance the overall danger risk in this case.

At the detention hearing, SA Robison recounted several such worrisome instances.

Even prior the investigation becoming known to Comberger, he posted on social media a news article discussing a federal investigation into a sex trafficking operation. The article not only detailed the allegations and sentence imposed for the sex trafficker, but noted that women or victims who had worked for him were key witnesses in the conviction. Comberger wrote,

> "Victims", yeah. Right. A dope fiend is a BEGGING VOLUNTEER and a piece of shit snitch informant ranks side by side with a child molester and a rapist. They ALL deserve a bullet between the eyes. Victims my ass!

[Government Exhibit 1].

Following the raid on his house in February 2021, Comberger knew that he was under federal investigation. [Hearing Recording, at 39:35–39:51]. Nonetheless, he reached out to various former Fantasy Escort Services employees and potential witnesses after that time to encourage them not to cooperate with law enforcement. [Hearing Recording, at 40:10–49:10 (testimony concerning witness intimidation efforts, as described *infra*)]. Specifically, Comberger advised former employee and potential witness Nicole Wood ("Wood") of the phone number investigators were using to contact witnesses and told her not to answer it and, if she did, not to disclose anything. Investigators subsequently learned that Comberger had been contacting several witnesses in this manner and providing the same directives.

Additionally, on April 5, 2021, Comberger met with Wood at his home. Before conversing, he demanded to and, ultimately, physically examined Wood's chest for a wire, itself an intimidating and invasive gesture. He then represented to her that he believed the investigation stemmed from an unnamed former employee's decision to speak with law enforcement. He further stated that the "good news" was that this unnamed employee was now dead, having died of a drug overdose in California. During a subsequent meeting with Wood on April 15, Comberger further

8

expressed relief that this unnamed employee died in California rather than Kentucky, so that no one would suspect him of having killed her. He emphasized, though, that "if she had been a man," he would have "cut her fucking throat."

Over the course of these meetings with Wood, Comberger additionally relayed a conversation he had with another witness, Janese Demny ("Demny"), who had been physically present during the February 2021 search warrant execution at Comberger's residence. Comberger explained to Wood that he had directed Demny to "keep her fucking mouth shut," and that, if Fantasy Escort Services did face criminal trouble, she would be to blame. Comberger further complained of another former employee, identified only as Jessica, who he believed had told law enforcement "everything." Based on the entirety of these conversations with Comberger, Wood advised law enforcement that she feared Comberger's threats were serious and that he was capable of retaliating against her, or of directing others to retaliate against her, even if detained. [Hearing Recording, at 50:40–60:00].

SA Robison further testified as to Comberger's prior efforts to destroy important evidence in the case. [Hearing Recording, at 49:19]. Comberger told Wood that he had reached out to a Canadian technology company that managed a server housing details about Comberger's business, employees, and commercial sex appointments. When he asked the company to destroy the server, it replied that it could not do so. Comberger nonetheless continued to attempt to convince the company to destroy the evidence, stating that because it was based in Canada, the FBI lacked authority to order its preservation or disclosure.

The threats of physical harm to cooperating witnesses risk serious danger to the witnesses themselves, as well as to the community more broadly. To be plain, such conduct fundamentally endangers the integrity of the judicial process. *See, e.g.*, *United States v. Prieto*, No. 3:19-CR-

9

142-RGJ, 2020 WL 3105414, at *4 (W.D. Ky. June 11, 2020) (upholding a detention determination where defendants were found to be a danger based on, *inter alia*, "their own threats of violence, including threats to potential witnesses or cooperators"). In fact, courts have concluded that even non-violent threats to the judicial process may constitute a sufficient danger in the BRA context. *See, e.g.*, *United States v. Richardson*, No. 2:11-CR-220, 2011 WL 5026456, at *6 (S.D. Ohio Oct. 21, 2011) (concluding that, under the particular circumstances of the case, "even the non-violent forms of obstruction of justice pose a sufficiently serious danger to the community such that pretrial detention [was] warranted"); *United States v. LaFontaine*, 210 F.3d 125, 134 (2d Cir. 2000) (noting its prior observation that detention may be "even more justified in cases of violations related to the trial process (such as witness tampering) than in cases where the defendant's past criminality was said to support a finding of general dangerousness" and "reject[ing] [the defendant's] contention that her attempts to influence the testimony of . . . [witnesses] does not constitute the type of danger to the community that would support detention").

Here, the comments Comberger made to Wood endorsing violence against other cooperators are, in context, thinly veiled threats about what could befall Woods or other witnesses if they aided law enforcement in this prosecution. Though Defendant seeks to characterize some of the statements as mere reiteration of the individuals' right to decline speaking with law enforcement, the reality is substantially more sinister. The relationship between Defendant (as the investigation's central target) and the witnesses, as well as the peripheral references to violence, clearly evince an intent to intimidate the witnesses and influence their degree of participation in the case.

Concerningly, the threats appear more credible given Defendant's current mental health state and professed desperation to avoid facing further prosecution. [Hearing Recording, at 50:35–50:45 (recounting Comberger's statement that "he'd rather die than go to jail")]. A defendant that perceives, and has stated to witnesses themselves, that he essentially has nothing to lose surely poses an increased risk of acting on previously communicated threats of violence. Moreover, that Comberger ostensibly credits the instant prosecution for his hopelessness and desire for self-harm enhances the Court's concern that he may act on violent threats towards witnesses in the case that he believes are supporting the prosecution and in part responsible for his situation.

In conclusion, the record demonstrates that Comberger poses a real, tangible risk of acting on his stated threats of violence toward those that cooperate with law enforcement in the prosecution against him. There is also evidence that Comberger already has attempted to obstruct justice and destroy evidence that could incriminate him in the case, after learning of the existence of the federal investigation. Such conduct risks both violence to actual people as well as harm to the integrity of the judicial system and trial process. Both, in the Court's view, constitute considerable dangers to the community. The Court thus finds that this critical factor weighs strongly in favor of detention.

### 3. **History and Characteristics of the Defendant**

The third BRA factor is the history and characteristics of the defendant. *See* 18 U.S.C. § 3142(g)(3). Here, Comberger's history and his present characteristics are a relatively mixed bag. Comberger's representation, per the PSR, that he has a positive relationship and frequent contact with his daughter, Samantha, is encouraging. However, Comberger's lack of legitimate employment history over the past 30 years is problematic, even if the Court believes (as previously discussed) that it could fashion conditions to target its impact on flight risk. And, though

Defendant has lived in the Lexington community for over forty years, little is known on the record about his community involvement or ties. Finally, the Court knows little about Comberger's personal characteristics, beyond his proclivity for threatening and advocating violence. Relatedly, Comberger's satisfaction at the death of his former employee, believed (inaccurately) to be a cooperator, reflects poorly on his character. Considering the limited information known on this front, the Court views this factor as largely neutral, but slightly tilted pro-detention, given Comberger's endorsement of violence toward those he perceives as opposing him.

4. **<u>Nature and Seriousness of the Danger</u>**

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). The analysis pertinent to this factor essentially tracks the discussion relating to the second factor—the weight of the dangerousness evidence. As noted, the nature of the potential danger risk Comberger poses is multifaceted. It encompasses a risk of physical harm and violence to actual people, as well as interference with and disruption of the administration of justice. These risks are unquestionably grave. Further, the Court finds the applicable danger risks particularly concrete and serious. This factor plainly favors detention.

Nor can the Court conceive of sufficient conditions to target these risks and adequately assure the safety of others—namely prospective witnesses—and the integrity of the judicial process, more generally. As the United States emphasized, this is a witness-heavy prosecution, and Comberger's intimidating and threatening conduct presents a real risk to the witnesses' safety and to the trial process. Given the number of witnesses likely involved (some surely still unknown to the Government) and the infinite number of possible communication methods, it would undoubtedly be nearly impossible to police all of Comberger's communications and interactions

to ensure he ceases the sort of conduct that he has already demonstrated on several occasions. *Cf. United States v. Poulsen*, 521 F. Supp. 2d 699, 706 (S.D. Ohio 2007) (commenting that, "in our electronic age of ubiquitous and rapid communication devices, the Court [was] ill-equipped to supervise [the defendant's] conduct" and restrict his access to technology in a manner sufficient "to prevent him from having improper contact with other witnesses").

Under the circumstances, the reliability of available conditions to target the at-issue harm is too speculative, and the gravity of the potential danger should they fail is too great, to convince the Court that such conditions could reasonably assure the safety of others and of the community. The Court thus finds detention based on danger risk warranted.

### III. CONCLUSION

For the stated reasons, the Court finds the United States has not shown by a preponderance of the evidence that no conditions could adequately assure Comberger's appearance at future proceedings in this case. The Court does, however, find that the United States has shown by clear and convincing evidence that no available conditions can adequately target the serious danger risks posed by Comberger's release. The BRA requires Comberger's detention, and he shall remain in custody pending trial.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this the 29th day of April, 2021.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge